IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Rover Pipeline LLC,                              Case No. 3:17CV225

        Plaintiff

      v.                                              **ORDER**

5.9754 Acres of Land, More or Less,
 in Defiance County, Ohio, et al.,

        Defendants

      This is an eminent-domain case under the Natural Gas Act (NGA), 15 U.S.C. § 717f, *et seq.*

      In February, 2017, the Federal Energy Regulatory Commission issued a Certificate of Public Convenience and Necessity to the plaintiff, Rover Pipeline LLC. The Certificate authorized Rover to construct a 713-mile-long natural-gas pipeline that runs, in substantial part, through the Eastern and Western Divisions of the Northern District of Ohio.

      Rover then filed this suit to condemn the land over which its pipeline would run. (Doc. 1). It also sought what was effectively a preliminary injunction granting it immediate possession of that land – so that it could start building the pipeline according to the FERC-approved construction schedule – and deferring the issue of the landowners' just compensation. (Doc. 12).

      On March 9, 2017, I held a joint hearing on that motion with my colleague, the Hon. Sara Lioi, who was presiding over the companion case that Rover filed in the Eastern Division. *See Rover Pipeline LLC v. Bartter, et al.*, Case No. 5:17CV239 (N.D. Ohio).

At that hearing, and in the days and weeks that followed, Rover settled with all 141 defendant landowners in this case as to immediate possession. (Doc. 22; Doc. 280 at 7). It also came to terms with many other landowners as to compensation for the takings.

Pending is Rover's motion under Fed. R. Civ. P. 71.1 to appoint a commission to determine the compensation owing to those landowners who have not settled. (Doc. 3).

Opposing the motion, a group of eight landowners who own nine parcels of land – defendants Valerie Nye, Patty Stearns, Michael Stearns, Thomas Waldock, Kenneth Stearns, Jane Stearns, Christopher Turley, and Barbara Ann Turley – argues that a jury ought to determine just compensation. (Doc. 280).

For the following reasons, I grant the motion to appoint a commission.

**Discussion**

Civil Rule 71.1 generally provides that, "[i]n an action involving eminent domain under federal law, the court tries all issues, including compensation[.]" Fed. R. Civ. P. 71.1(h)(1).

There are three exceptions to the rule.

Under the first exception, which does not apply in NGA litigation, *see Rockies Exp. Pipeline, LLC v. 4.895 Acres of Land*, 2008 WL 5050644, *1 (S.D. Ohio), the court does not determine compensation if "compensation must be determined . . . by any tribunal specially constituted by a federal statute to determine such compensation[.]" Fed. R. Civ. P. 71.1(h)(1)(A).

The second exception, which applies when no law provides for such a tribunal, permits a compensation determination "by a jury when a party demands one within the time to answer or within any additional time the court sets, unless the court appoints a commission." Fed. R. Civ. P. 71(h)(1)(B).

2

And under the third exception, a court may – notwithstanding a party's demand for a jury trial – appoint "a three-person commission to determine compensation because of the character, location, or quantity of the property to be condemned or for other just reasons." Fed. R. Civ. P. 71(h)(2)(A). Such a commission "has the powers of a special master under [Civil] Rule 53(c)."

In cases like this one, where the landowners have demanded a jury, I have discretion to honor that demand or appoint a commission. *See U.S. v. Reynolds*, 397 U.S. 14, 20 (1970); *Rockies Exp.*, *supra*, 2008 WL 5050644, at *2; *Moore's Federal Practice* § 71.1.11[1][d].

## A. Right to a Jury Trial

The landowners first argue that Rule 71.1 incorporates state law on the question whether a jury or commission should determine compensation. (Doc. 280 at 11–13). Because Ohio law guarantees the right to trial by jury in condemnation cases, *see* Ohio. Const., art. I, § 19, the landowners contend that Rule 71.1 entitles them to a jury trial.

This argument lacks merit.

First, it is settled law that "there is no constitutional right to jury trial in the federal courts in an action for the condemnation of property under the power of eminent domain." *Reynolds*, *supra*, 397 U.S. at 18; *see also Rockies Exp.*, *supra*, 2008 WL 5050644, at *2 ("although Rule 71.1(h) permits a jury trial, the Rule does not establish an unequivocal right to a jury trial, but rather provides only that any party may demand a jury trial on the issue of just compensation, and that the district court retains the discretion under certain circumstances to deny a jury demand and refer the matter to a commission").

Second, numerous courts have rejected the argument that Rule 71.1 incorporates state law on the issue of whether a jury or a commission decides compensation.

For example, in *Alliance Pipeline L.P. v. 4.360 Acres of Land, More or Less*, 746 F.3d 362, 366 (8th Cir. 2014), the Eighth Circuit held that Rule 71.1 preempted a provision of North Dakota law that – much like the Ohio constitutional provision the landowners here cite – establishes a right to a jury trial in condemnation cases.

The Seventh and Eleventh Circuits have come to essentially the same conclusion. *See N. Border Pipeline Co. v. 64.111 Acres of Land in Will Cnty., Ill.*, 344 F.3d 693, 694 (7th Cir. 2003) (Rule 71.1 prevails over provision of NGA directing courts to conform their practices in condemnation cases to state-court practices and procedures); *S. Natural Gas Co. v. Land, Cullman Cnty.*, 197 F.3d 1368, 1372–73 (11th Cir. 1999) (same).

The law in the Sixth Circuit is not to the contrary, despite the landowners' suggestion otherwise.

According to the landowners, *Columbia Gas Transmission Corp. v. Exclusive Nat. Gas Storage Easement*, 962 F.2d 1192 (6th Cir. 1992), holds that "a federal district court must apply state substantive law on issues of compensation in condemnations brought under the NGA." (Doc. 280 at 12). That implies, the landowners suggest, that state-law preferences for jury trials likewise apply in NGA condemnation cases.

That argument has no support in *Columbia Gas*, which holds only that a district court must follow state law "in determining the amount of compensation due." *Id.* at 1199. Indeed, *Columbia Gas*, a case where a commission determined just compensation, says nothing about whether state-law preferences for jury trials ought to control in federal eminent-domain proceedings.

There being no foundation for the landowners' contention that they have a right to a jury trial in this case, I turn to whether the circumstances favor appointing a commission.

4

### B. Propriety of Appointing a Commission

In determining whether to appoint a commission, I consider "the character, location, or quantity of the property to be condemned" and "other just reasons." Fed. R. Civ. P. 71.1(h)(2)(A).

I may also consider whether appointing a commission will: 1) provide uniformity of compensation awards; 2) prevent hardship to landowners located long distances from the courthouse; 3) eliminate the burden on juries having to travel long distances to view the properties; and 4) eliminate the burden on the court from holding multiple jury trials. *See* Fed. R. Civ. P. 71(h) Advisory Committee's notes.

While the decision ultimately depends on the "totality of the circumstances," *Rockies Exp.*, *supra*, 2008 WL 5050644, at *5, most courts agree that "the focus of the analysis should be on the overall scope of the project." *Moore's Federal Practice*, § 71.1.11[d].

### 1. Parties' Arguments

Rover argues that I should appoint a commission because: 1) the case involves multiple individually owned tracts of land; 2) holding jury trials in those cases will place a heavy burden on the court's docket; and 3) the complexity of the issues that the landowners raise *vis-a-vis* valuation warrants the expertise and efficiency that a commission is likely to bring to these matters.

The landowners respond that a commission is inappropriate, given that only a few landowners have not settled with Rover – thus necessitating only a few trials. They also contend that a jury trial is the superior method for fixing compensation, particularly because each parcel of land is unique. In contrast, they argue, any commission is bound to apply a "cookie cutter" approach in determining the value of their respective parcels.

Finally, the landowners argue that their representation by a single law firm will maximize judicial economy during the discovery phase, and that one or more bellwether trials will likely "establish values by which the parties can engage in productive discussions regarding the resolution of the remaining tracts of land." (Doc. 280 at 9).

I reject these contentions and conclude that a commission is the more appropriate body to decide compensation.

## 2. Scope of the Project

When Rover first moved for the appointment of a commission, it faced the prospect of dealing with the owners of 141 unique tracts of land. But Rover has since settled with the vast majority of the landowners; what remains is to fix the compensation to which the nine defendants are entitled. I disagree with the landowners, however, that "the overall scope of the project," *Moore's Federal Practice*, § 71.1.11[d], has so narrowed that the commission is not an appropriate body to determine compensation.

To begin, eight separate individuals own the nine outstanding parcels, and courts have recognized that commissions are particularly appropriate when condemnation proceedings involve multiple individually owned parcels. *See U.S. v. Certain Land Situated in the City of Detroit*, 178 F. Supp. 2d 792, 804 (E.D. Mich. 2001) (presence of "numerous individually-owned parcels of land" supports appointment of commission).

Moreover, and even more importantly, these cases – while far fewer in number than originally planned – present complex valuation issues, as the landowners' own papers establish.

Based on the defendants' opposition brief, it appears that any jury, multiple juries, or a commission will have to grapple with "the issues of: (1) severance values, including issues of partial

6

taking[s] rising to the level of fee taking[s;] (2) . . . mineral estates, commercial timber crops, or residential development[;] (3) differences in tract characteristics and/or encumbrances, and competing claims to such interests including taking from an interest holder other than a fee holder[;] (4) the nature of the property interests to be taken[;] and (5) alleged stigma associated with placement of pipelines" on the defendants' properties. (Doc. 285 at 8).[1]

The apparent complexity of these issues weighs in favor of appointing an commission, the members of which will in all probability be expert in issues of real-estate law and valuation. *Accord EQT Gathering, LLC v. A Tract of Property Situated in Knott Cnty., Ky.*, 2012 WL 6049691, *1 (E.D. Ky.) ("the district court may choose to appoint a three-member commission if the facts are very complex").

Furthermore, holding jury trials with respect to all nine parcels of land, or even in a few cases that may or may not turn out to be bellwether cases, is likely to put a heavy burden on the court's docket. My Southern District colleague, District Judge Greg Frost, made an observation to that effect in the *Rockies Express* case, 2008 WL 5050644, at *5, that applies with equal force in this case:

> Appointment of a commission will also enable the parties to conclude their dealings more quickly than would jury trials while concurrently serving to further judicial economy. Although involving multiple parties and multiple pieces of property, resulting in a need for multiple just compensation awards, the instant litigation is but one case on the Court's docket . . . Inserting these jury trials into the Court's existing schedule of trials, hearings, and other civil and criminal proceedings means that many if not most of the landowners would experience unfortunate but unavoidable delays – some of which could prove considerable – before obtaining just compensation. That would not be an acceptable result. The parties are entitled to a prompt and fair disposition of these proceedings.

---

[1] Although I take this quotation from Rover's reply brief, these are among the questions the landowners put in issue in their opposition brief. (Doc. 280 at 6–8). To its list I would also add the likelihood that, even if every tract is primarily farmland, the kind of crops and overall productivity may vary between the tracts.

7

It is true, as the landowners explain, that their joint representation by a single law firm is likely to simplify and expedite discovery (and, possibly, scheduling as well).

Yet these benefits do not provide an adequate counterweight to the burden that will accompany the many jury trials and their component parts – summoning of the venire, voir dire, pretrial motion practice, the trial itself, post-trial motion practice and the like – needed to resolve these cases. Moreover, the cases are likely to involve additional expense if it is necessary, as it may well be, to take the jury (and court staff) to view the affected properties that sit in rural Wood County and Hancock County.[2]

For these reasons, "the overall scope of the project," *Moore's Federal Practice*, § 71.1.11[d], supports the appointment of a commission.

### 3. Benefits Associated with a Commission

The landowners' suggest that the commission will adopt a "cookie cutter" approach by valuing each distinct parcel of land according to the same rote formula. (Doc. 280 at 9). But this suggestion is nothing more than speculation, and the procedures set forth in Rule 71.1 would seem to go a long way toward ensuring that fair, impartial, and competent commissioners will decide the compensation question.

The Rule requires that, before appointing the commissioners, I must "advise the partes of the identity and qualifications of each prospective commissioner and alternate." Fed. R. Civ. P. 71.1(h)(2)(D). I may also permit the parties to examine them. *Id.* Then the parties will have an

---

[2] The landowners emphasize that they have not requested jury views of their property (Doc. 280 at 17), but nor have the disavowed the need to do so.

opportunity to object. Safeguards like these ensure that the parties will have the opportunity to make their respective cases before a fair and thoroughly vetted tribunal.

The landowners also overlook or ignore the significant benefits that adjudication by commission will bring to these matters. As already mentioned, the purpose of the commission is to bring expertise and efficiency to a relatively complex set of issues. Their likely expertise in property law and real-estate valuation is likely to produce fair and reasonably uniform compensation awards. And as Judge Marbley explained in the companion case that Rover filed in the United States District Court for the Southern District of Ohio:

> appointment of a commission will allow experts to evaluat[e] market prices for land, while lay jurors likely would be at a loss to evaluate the inevitable disagreement among experts hired by the litigants. This, in turn, means the commissioners will be less likely than juries to split the difference in the parties' valuations (a tendency that encourages litigants to take extreme positions in jury trials). It goes without saying that appointment of a commission experienced with the issues surrounding this litigation and land value more generally will be able to provide for reasonably unfirm compensation awards, where one jury or multiple juries may be less uniform in reasoning and the resulting awards.

(Doc. 666 at 20, *Rover Pipeline LLC v. Kanzigg, et al.*, Case No. 2:17CV105 (S.D. Ohio)).

\* \* \*

In sum, and having considered the totality of the circumstances – including the scope of the project, and the character, number, and location of the affected property – I will appoint a Rule 71.1 commission to decide compensation.

### C. Appointing the Commissioners

On appointment, the commissioners must apply Ohio's substantive law "in determining the amount of compensation due." *Rockies Exp. Pipeline LLC v. 4.895 Acres of Land, More or Less*, 734 F.3d 424, 429 (6th Cir. 2013). Ohio law permits the landowners to recover both "the value of the

9

taken land" and the "damages to the residue of the property" to "compensate for any injury that may result to the remaining lands by reasons of the construction." *Id.* (internal quotation marks and citations omitted).

Like Judge Marbley, I will follow Rule 71.1(h)(2)(A)–(C) in selecting the commissioners. I will also consider the guidance contained in the 1985 Advisory Committee Note to the Rule:

> The amended Rule does not prescribe a qualification standard for appointment to a commission, although it is understood that only persons possessing background and ability to appraise real estate valuation testimony and to award fair and just compensation on the basis thereof would be appointed. In most situations the chairperson should be a lawyer and all members should have some background qualifying them to weigh proof of value in the real estate field and, when possible, in the particular real estate market embracing the land in question.

I expect to notify the parties of my selection within sixty days after entry of this order. In accordance with Rule 71.1(h)(2)(C), I will advise the parties of the prospective commissioners' qualifications.

I will also permit the parties to object to the prospective commissioners on the basis of "good cause." Any objections to my selections must be filed within fourteen days after I notify the parties of the prospective commissioners. Failure to so object within that time will work a forfeiture of the right to object. *Rockies Exp.*, *supra*, 2008 WL 5050644, at *7.

## Conclusion

It is, therefore

ORDERED THAT:

1. Rover's motion to appoint a commission (Doc. 3) be, and the same hereby is, granted; and

2.  I will advise the parties within sixty days of my selections of three prospective commissioners and two alternates. The parties' objections, if any, to these selections will be due fourteen days after I disclose the prospective commissioners' and alternates' identities.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge