# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Rover Pipeline LLC,  Case No. 3:17CV225

    Plaintiff

    v.  **ORDER**

5.9754 Acres of Land, More or Less,
 in Defiance County, Ohio, et al.,

    Defendants

Pending in this condemnation case under the Natural Gas Act, 15 U.S.C. § 717, *et seq.*, is a motion by the defendant landowners to reconsider my February 27, 2019 oral ruling granting several motions to exclude the testimony of the landowners' proposed expert witnesses Jason Whalen, Mark Koeninger, and Eric Gardner. (Doc. 395).[1] In the alternative, the landowners ask that I certify my prior order for an interlocutory appeal under 28 U.S.C. § 1292 and stay the Fed. R. Civ. P. 71.1 commission hearing, which is set to begin on April 15, 2019, pending the outcome of such appellate proceedings.

For the following reasons, I grant the motion for reconsideration in part and deny it in part and deny the request for an interlocutory appeal.

---

[1] Given the number of motions in limine that the parties had filed, and the need to rule on them as promptly as possible, I did not prepare written opinions. I made clear to counsel that I would, on request, prepare formal written opinions if they desired for purposes of appeal. This order will stand as such opinion regarding the experts and reports at issue in the defendants' motion for reconsideration.

## Standard of Review

### A. Motion for Reconsideration

"District courts have authority under both common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004).

"Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.*

### B. *Daubert* Standard

"Federal Rule of Evidence 702 requires me to perform a 'gate-keeping' function when considering the admissibility of expert testimony." *Przybysz v. City of Toledo*, 302 F. Supp. 3d 915, 922 (N.D. Ohio 2017) (Carr, J.).

"My gate-keeping duties here are threefold." *Id.* at 923.

"First, I determine whether the witness is qualified as an expert; second, whether his testimony is reliable; and third, whether the expert's reasoning or methodology properly applies to the facts at issue—whether, in other words, his opinion is relevant."

## Discussion

### A. Koeninger and Gardner

The landowners sought to call Koeninger and Gardner to opine that the pipeline's "potential impact radius" (PIR) – which refers to the radius within which a possible pipeline failure could significantly impact people and property and would, in their view – stigmatize the residue of the landowners' estates. Koeninger devised this PIR stigma theory, and Gardner

incorporated it into his analysis and concluded that the stigma would cause a forty-percent reduction in the fair market value of each parcel of land at issue.

Rover moved to exclude the testimony on multiple grounds, including, *inter alia*: 1) the lack of any objectively verifiable data to support Koeninger's and Garnder's opinions; 2) the experts' failure to test the validity of their PIR stigma theory with available market data; and 3) the experts' failure to cite any publication, treatise, or the like that used or applied the PIR stigma theory. (Doc. 367).

In granting the motion, I relied primarily on the experts' failures to: 1) explain why the PIR stigma would cause a forty percent reduction in the fair market value of the landowners' property; and 2) test, or even try to test, whether the PIR stigma had caused similar reductions in property value in land on which other pipelines had been built.

> I stated:
>
> If memory serves it was a uniformly applied figure over nine different parcels without consideration of dimension and any other factors that might affect that sort of outcome. And I don't see any basis at all for simply picking 40 percent out of the air. Of all of these experts, it does seem to me to be the one that is at least quasi scientific and verifiable by – by experience at least. There's no indication of probability. I mean, how likely is it, what has been the history of pipeline explosions let's say in the last 10 to 20 years? There's nothing in there about that. What's the consequences where you have a catastrophic explosion, and particularly in a rural area? What's the – and of course that would all have to be factored into – into any estimate of, you know, present day diminution of value. And if – if it's totally unlikely, then likely to have no effect at all. If it's highly likely, then, yeah, by all means. If things blow up regularly – but there's no indication of that at all. There's no indication of a basis for contending that the property's lost any value, much less value to that degree of – to that degree. And once again, as really all of these issues, I think that the proposed testimony that I'm not admitting in simply would not be useful to the jurors. I think they are in as good a position as any of the proposed extra [*sic*] witnesses whose testimony I'm not allowing, to – to reach a conclusion that is fair, sensible, reasonable and appropriate, and would not include that kind of risk of succumbing to speculation.
>
> And then finally as to – and just to check my notes, there's no objective verifiable facts, which of course is – in this kind of testimony seems to be at the core of the

> liability, obviously can't contest something, can't go up on the pipeline to see whether or not it gets – it's irrevocable (phonetic) as in a scientific study, but that's not the issue. The issue is how likely is it under all the circumstances, and if it were to happen, what, in fact, property by property, might be the consequences and take care and consideration with the probability.

(Doc. 394, PageID 8271–73).

The landowners argue that my ruling was improper because it focused on the weight that Gardner's opinions should receive, rather than "his qualifications or methodology." (Doc. 395, PageID 8292). They also argue that I did not give a reason for excluding Gardner's testimony "regarding stigma in the marketplace, the values of the properties in the before, or his opinions as to the marketability of the property following Plaintiffs' take." (*Id.*) (internal emphasis omitted). Finally, they contend that my ruling did not "touch on the independent opinions and conclusions of Mr. Koeninger or the admissibility or accuracy of his renderings." (*Id.*).

I disagree and adhere to my prior ruling.

First, my ruling went directly to the admissibility of this evidence, rather than the weight that the commission could afford it.

Rule 702 provides that expert testimony is inadmissible unless it is "based on sufficient facts or data." Fed. R. Evid. 702(b).

In this case, however, Koeninger admitted that he did not rely on any objective evidence – be it peer-reviewed research, comparable sales analysis, or market data studies – to formulate his theory that a pipeline and its PIR will stigmatize the residue of that parcel. (Doc. 367–6, PageID 7135–38). The only basis for his opinion was his own experience, but Koeninger is an architect who, by his own admission, has no expertise in pipelines or pipeline safety, assessing the fair market value of a property, or even the stigma allegedly associated with pipelines. (*Id.*, PageID 7122, 7136, 7138, 7141–42).

4

Second, these reasons show why it would be inappropriate, and inconsistent with *Daubert*, to permit Koeninger and Gardner to offer their PIR stigma opinions.

Most simply put, neither Gardner – who merely accepted Koeninger's work at face value and used it to generate his opinion regarding the forty-percent reduction in value – nor Koeninger could "bridge the analytical gap between his conclusion and any facts that would have lent support for his conclusions in this case[.]" *Rover Pipeline, LLC v. 10.55 Acres of Land, More or Less, in Ashland Cnty., Ohio*, 2018 WL 4386024, *9 (N.D. Ohio 2018) (Lioi, J.) (excluding Koeninger's and Gardner's testimony under *Daubert* for very similar reasons).[2]

Third, my conclusions apply equally to Koeninger and Gardner. Gardner simply incorporated Koeninger's unfounded – and thus fatally defective – PIR stigma theory into his own analysis and produced an entirely speculative opinion.

For all these reasons, as well as for those set forth in my oral ruling, I will adhere to my ruling that Koeninger's and Gardner's opinions are inadmissible under *Daubert*.

**B. Whalen**

The landowners sought to call Jason Whalen, a real estate broker and auctioneer, to opine that:

1)  pipelines negatively affect the value and marketability of property;

---

[2] Nor is there merit to the landowners' contention that the Guardian Pipeline Study and an article from *Right of Way* magazine support the reliability of Koeninger and Gardner's opinions. First, neither expert cited the Guardian Pipeline Study in his expert report. Second, Koeninger – who developed the PIR stigma theory – testified during his deposition that he was *not* relying on that study. Third, the thrust of the *Right of Way* article tends to undermine, to a substantial degree, the basis of Koeninger's opinion that his experience (as an architect) alone was sufficient support for his PIR stigma theory. (Doc. 387–1, PageID 8215) (explaining that "each situation must be reviewed on an individual basis *and evaluated using market evidence as opposed to guesswork and speculation*.") (Internal emphasis supplied).

5

2) properties with pipeline easements have lower, depressed values, on average, than comparable properties without pipeline easements;

3) Rover's easements across the smaller of landholders' properties will render those parcels undevelopable;

4) pipelines lower the water table;

5) as to the larger properties, the easements will: a) require drain tiles to be moved/disassembled; b) make it hard for landowners to split their properties into smaller lots and reduce the available frontage for potential residential use; c) preclude all uses other than agricultural uses;

6) reduce property values due to "stigma" associated with pipelines on the land.

Rover moved to exclude the opinions, and I granted the motion, stating:

> With regard to Whalen, basically the stigma testimony, once again, it's not connected to particular properties. It's completely generalized. There's no description from me of the property at issue, what – where the pipelines are located, simply the size of the parcels, all matters, it seems to me, that would affect a person's willingness to – to purchase property with the pipelines as opposed to without it. And if memory serves, he did suggest that there was a pair – pair of sales, I think he was the auctioneer, and then there's property within a couple of miles out in Archbold, but, quite candidly, I don't see the pairing, given what Rover represented in terms of the difference between the – differences between the two properties. I think, to some extent I suppose they are, I suppose you can figure per-acre price if you have already and can do so, but nonetheless I just don't think that's a reliable figure. I fully appreciate the problems, it's gratuitous for the defendants that there happens to be this sale handled by the same person, but, nonetheless, I don't think that the properties are sufficient comparables. And they are, of course, some distance removed from the Bowling Green area. I don't know whether that affects anything, but once again that's the reason not to – not to allow the testimony. Certainly with the – with a couple of the issues that he did point to, namely the condition of the drainage tiles and the water table, he acknowledged that he didn't – didn't know as to those conditions among those that he mentioned factors in that one example. So I'm not going to allow his testimony.

(Doc. 394, PageID 8270–71).

In their motion for reconsideration, the landowners do not challenge my exclusion of Whalen's third, fourth, and fifth opinions. (Doc. 395, PageID 8290, 8292, 8294).

Rather, they argue that Whalen should be permitted to testify that, based on his experience auctioning farmland in the area, "prospective purchasers had a high awareness of pipelines and pipeline easements," that "the presence of pipelines on farm property was viewed very negatively by market participants," and that "stigma associated with the pipelines played a strong role in the marketplace and the value of farms for sale." (*Id.*, PageID 8290).

They also want Whalen to testify about the sale of two parcels in Archbold, Ohio, one of which was encumbered by Rover's pipeline. According to Whalen, the property that was not encumbered by a pipeline easement sold for a per-acre price that was nearly double the per-acre price of the encumbered property. (*Id.*).

First, I adhere to my original decision that Whalen may not testify about the alleged comparable sales that occurred in Archbold, Ohio.

Although I recognize the validity and general reliability of the paired sales analysis, *see generally McCann Holdings, Ltd. v. U.S.*, 2013 WL 3326646, *626 (Ct. Fed. Cl. 2013), Whalen's application of that method here was unsound.

Indeed, the two properties at issue had critical differences. Unlike the unencumbered property, the property encumbered by Rover's pipeline easement: 1) did not have finished drain tile on it, a factor that Whalen conceded could on its own preclude a sale of the encumbered property; 2) had two preexisting easements on it, one for oil and gas drilling and one owned by Toledo Edison; and 3) was planted with soybeans, which were subject to adverse market conditions flowing from recently contemplated and/or imposed tariffs.

"Given that the [parcels involved] were dissimilar from each other, the Court concludes the analysis cannot reliably show the [e]ffect a pipeline has on a property value." *Sabal Trail*

7

*Transmission, LLC v. 3.921 Acres of Land in Lake Cnty., Florida*, 2017 WL 9939115, *9 (M.D. Fla. 2017).

Second, I will adhere to my original decision that Whalen cannot testify about the allegedly stigmatizing effects of the pipeline easements. I have already excluded this kind of evidence *vis-à-vis* Koeninger and Gardner, and Whalen, who did not try to test his stigma theory or cite any objective data to support his opinion, will not be permitted to testify about stigma.

Finally, I will reverse my prior decision and permit Whalen to testify that, in his experience as an auctioneer and broker, market participants are attuned to the presence of a natural gas pipeline on a parcel of land, and that market participants tend to view the presence of a pipeline on agricultural land unfavorably.

This evidence, based as it is on Whalen's extensive experience in the real estate market, will help the Commissioners decide the fair market value of the landowners' properties.

Accepted at face value, Whalen's testimony establishes that, whether for good reasons or poor ones, many participants in the market for agricultural land in Northwest Ohio view the presence of a pipeline as something to be avoided. A logical inference therefrom is that such pipelines may lower the value of encumbered properties.

Admittedly, Whalen did not try to quantify how these attitudes affect the fair market value of the parcels at issue, but that defect goes more to the weight of his opinion than its validity. How much weight, if any, ought to be afforded to Whalen's opinion will be a matter for the Commission to decide.

### C. Interlocutory Appeal

Under 28 U.S.C. § 1292(b), I have "first line discretion" to certify an interlocutory order for immediate appeal. *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 504 (6th Cir. 2011).

Certification is appropriate if the order "(1) involves a controlling question of law, (2) as to which there is a substantial ground for difference of opinion, and (3) ... an immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Buccina*, 657 F. App'x 350, 351 (6th Cir. 2016).

The landowners argue that an interlocutory appeal is appropriate because my decision conflicts with two district court decisions permitting expert testimony about the PIR/stigma. *See Rover Pipeline LLC v. Rover Tract No. PA-WA-HL-004.500T*, 2019 WL 803902 (W.D. Pa. 2019), and *Rover Pipeline, LLC v. 1.23 Acres of Land, More or Less, Permanent Easement*, 2018 WL 3322995 (E.D. Mich. 2018).

Having reviewed these decisions, as well as Judge Lioi's decision excluding PIR/stigma evidence, *see Rover Pipeline, LLC v. 10.55 Acres of Land, More or Less, in Ashland Cnty., Ohio*, *supra*, 2018 WL 4386024 (N.D. Ohio 2018), I do not believe that certification is appropriate.

Despite the landowners' best efforts to argue otherwise, this case does not present the broad, categorical question of whether evidence of PIR/stigma is *ever* admissible.

Rather, the question this case presents is whether permitting Koeninger and Gardner to testify about the PIR/stigma is consistent with *Daubert*. Such a question is one of judicial discretion, and the Sixth Circuit has held that such discretionary decisions on the admissibility of evidence are not "controlling" for purposes of § 1292(b). *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002).

Far from highlighting the need for an interlocutory appeal, the fact that different judges addressing different records reached different decisions underscores why this issue does not lend itself to immediate interlocutory review.

**Conclusion**

It is, therefore,

ORDERED THAT:

1. The motion for reconsideration (Doc. 395) be, and the same hereby is, granted in part and denied in part as provided herein;

2. The request to certify an order for interlocutory appeal be, and the same hereby is, denied;

3. Rover's request for sanctions (Doc. 396) be, and the same hereby is, denied.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge